**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clutch Solutions LLC, | No. CV-25-02226-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Acronis Incorporated, | |
| Defendant. | |

At issue is Plaintiff Clutch Solutions, LLC's Verified Application for Pre-Judgment Provisional Remedies (After Notice) and Motion for Pre-Judgment Discovery in Aid of Enforcement (Doc. 1-1 at 91–135, Applic.), which Plaintiff filed on June 17, 2025, while this case was before the state court. On October 10, 2025, this Court entered an Order concluding among other things that Defendant Acronis Inc. did not waive its right to request a hearing and file a response to Plaintiff's Application by removing this case from Arizona state court and then seeking to transfer it to the U.S. District Court for the District of Massachusetts. (Doc. 42.) As a result, Defendant filed its Opposition to the Application on October 24, 2025 (Doc. 43, Opp'n), and Plaintiff filed its Reply on October 31, 2025 (Doc. 47, Reply). The Court held a hearing on the Application on November 3, 2025, (Doc. 48; Doc. 51, Tr. of 11/03/2025 Hr'g ("Hr'g Tr.")), and ordered the parties to file simultaneous supplemental briefs, which they timely filed on November 14, 2025 (Doc. 55, Def.'s Supp. Br.; Doc. 56, Pl.'s Supp. Br.). For the reasons set forth below, the Court will deny Plaintiff's Application and Motion.

## I.   BACKGROUND

According to the allegations in the Verified Complaint (Doc. 1-1 at 6–87, Compl.), Plaintiff Clutch Solutions, LLC is an Arizona Managed Service Provider ("MSP") that delivers comprehensive technology solutions and services to its clients, and Defendant Acronis, Inc. is a Delaware corporation headquartered in Massachusetts that delivers cybersecurity, data-protection, and endpoint-management solutions to MSPs and enterprises. In 2023, Plaintiff and Defendant entered into an agreement titled "#TEAMUP with ARIZONA CARDINALS" ("Teamup Agreement") in anticipation of Defendant entering into a separate sponsorship agreement with the Arizona Cardinals organization. (Compl. ¶¶ 17–18.) Under the terms of the Teamup Agreement, Plaintiff agreed to pay a monthly fee to Defendant to serve as Defendant's marketing and product delivery partner, but the contract only remained valid if Defendant's sponsorship agreement with the Arizona Cardinals came through. (Compl. Ex. 1 at 1 ¶ E; § 1.)  In addition, as conditioned in the Teamup Agreement, Plaintiff entered into another agreement with a designated middleman, non-party Ingram Micro, Inc., for the purchase, use, and resale of Defendant's products and services.

The sponsorship agreement between Defendant and the Arizona Cardinals organization fell through, and under the terms of the Teamup Agreement, once Defendant informed Plaintiff the Cardinals sponsorship agreement was off, the Teamup Agreement became null and void. (Compl. ¶¶ 29–30.) But Plaintiff claims that Defendant continued to cause Ingram to debit Plaintiff the monthly fee, which accumulated to over $800,000 in payments by the time Plaintiff filed this lawsuit. (Compl. ¶¶ 35–36, 60.) Plaintiff asserts that Defendant/Ingram were not authorized to continue to take the monthly fee from Plaintiff.

In June 2025, Plaintiff sued Defendant in Arizona state court, raising claims of unjust enrichment, conversion, fraud, money had and received, and constructive trust. (Compl. ¶¶ 63–130.) While the case was pending in state court, Plaintiff filed an Application under Arizona state law for prejudgment provisional remedies, including

attachment and garnishment, to try to freeze or seize certain assets of Defendant pending a final judgment in this case. (Applic.) Defendant properly removed this case based on diversity jurisdiction (Doc. 1), and this Court subsequently denied Defendant's motion to transfer venue to the U.S. District Court for the District of Massachusetts, finding that a forum selection clause in one of the parties' agreements does not pertain to Plaintiff's claims in this lawsuit (Doc. 36). The Court will now resolve Plaintiff's pending Application and Motion.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 64(a) provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Arizona law provides that a party may apply to a court for any provisional remedy allowed by law at any time after the filing of a civil action. A.R.S. § 12-2404.

First, applying Arizona law, Plaintiff seeks a provisional remedy under A.R.S. § 12-1521 in the form of prejudgment attachment of Defendant's property "as security for satisfaction of any judgment which may be recovered." (Applic. at 5–6.) That statute permits such attachment, among other instances, "[i]n an action upon a contract, express or implied, for payment of money which is not fully secured by real or personal property," *id.* § 12-1521(1), or "[i]n an action for damages or upon contract, express or implied, against a defendant not residing in this state or a foreign corporation doing business in this state," *id.* § 12-1521(3). Because the statutory requirements for obtaining a writ of attachment "are intended to safeguard defendants' due process rights, courts require strict adherence with the statutes' terms." *Yauck v. West Town Bank & Tr.*, 568 P.3d 386, 393 (Ariz. Ct. App. 2025) (citing *Valley Nat'l Bank of Ariz. v. Educ. Credit Bureau, Inc.*, 531 P.2d 193, 194–95 (Ariz. Ct. App. 1975) ("citing case law for the proposition that 'prejudgment summary remedies provided by statute must be strictly followed' to 'protect

- 3 -

the owner of property from undue hardship and deprivation of its full use and enjoyment prior to final adjudication of the creditor's right, if any, to the property'" (cleaned up))).

Under A.R.S. § 12-1522, an application for a writ of attachment must include an affidavit that makes "a 'showing' of statutory grounds for issuance" of the writ of attachment, and the "factual showing required by § 12-1522 cannot be made by an affidavit consisting of conclusory assertions by an affiant who fails to establish personal knowledge of the matters set forth therein." *Yauck*, 568 P.3d at 393. Moreover, A.R.S. § 12-1524 provides, "Before issuance of a writ of attachment, plaintiff shall execute and file a bond payable to defendant in an amount not less than the amount for which action is brought," and plaintiff "will pay all damages and costs as may be sustained by defendant by reason of the wrongful obtaining of the attachment."

Second, Plaintiff seeks a prejudgment writ of garnishment under A.R.S. § 12-1572. (Applic. at 6–9.) That statute requires an applicant to state: (1) it is a judgment creditor, (2) it has good reason to believe that, among other options, "the garnishee is indebted to the judgment debtor for monies that are not earnings" or "the garnishee is holding nonexempt monies on behalf of the judgment debtor," (3) "[t]he amount of the outstanding balance due on the underlying judgment" plus interest, attorney's fees, and garnishment fees on the date of the application, and (4) the garnishee's address.

A.R.S. § 12-2410 provides that, "[u]pon filing of a request for hearing" on a provisional remedy application, the Court shall set the hearing to consider "[t]he probable validity of the applicant's claim or claims and any defenses . . . of the party against whom such provisional remedy will operate." *Id.* § 12-2410(A), (C). The Court shall issue the requested provisional remedy "[i]f after hearing the court finds probable cause to believe the claim of the applicant is valid and that the statutory requirements for any provisional remedy have been met." *Id.* § 12-2410(D).

Although the statute does not define the "probable validity" standard the Court is to apply in examining the applicant's claim—or, as the statute alternatively expresses, "probable cause to believe the claim . . . is valid"—Black's Law Dictionary defines "valid"

as "[m]eritorious" in this context. Black's Law Dictionary (7th ed. 1999). And in civil contexts, Arizona courts have defined the objective "probable cause" standard as a reasonable belief of a "good chance" of establishing a claim to a jury, *Chalpin v. Snyder*, 207 P.3d 666, 673 (Ariz. Ct. App. 2008) (affirming the "good chance" definition of "probable cause" in malicious prosecution cases), or a "substantial likelihood of success," *In re Estate of Shumway*, 9 P.3d 1062, 1066–67 (Ariz. 2000) (defining "probable cause" in a will contest case). Thus, as a shorthand, in a probable validity hearing under A.R.S. § 12-2410, a court must determine if it can reasonably conclude that there is a "good chance" or "substantial likelihood" that the applicant's claim is meritorious.

Lastly, Plaintiff moves for discovery related to the aforementioned prejudgment remedies under Federal Rule of Civil Procedure 69, which permits discovery in aid of a judgment.

### III.    ANALYSIS

#### A.    Statutory Grounds for Issuance of Writ of Attachment

Pursuant to the provisional remedy statutory requirements, Plaintiff filed affidavits as required by A.R.S. § 12-1522 in conjunction with its Application (Doc. 1-1 at 108–13, Meece Aff.; Doc. 1-1 at 114–15, Sixkiller Aff.), and declarations in support of its Reply (Doc. 47-1, Meece Decl.; Doc. 47-2, Backie Decl.), to try to make a factual showing that it meets the statutory grounds for issuance of a writ of attachment under A.R.S. § 12-1521(1). (Sixkiller Aff. ¶ 2 ("I prepared and reviewed the Application, which entitles Plaintiff to the provisional remedy of attachment pursuant to A.R.S. § 12-1521(1) because this action is *based upon an implied contract that has no security for payment*." (emphasis added)).)

Plaintiff's theory of implied contract—upon which it bases its contention that the grounds for issuance of a writ of attachment under A.R.S. § 12-1521(1) are met—arises from the two claims for which it seeks the writ: Count 1, for Unjust Enrichment, and Count 4, for Money Had and Received. (Compl. ¶¶ 63–82, 114–22.) The parties dispute whether those claims are based on an implied contract of the sort contemplated in A.R.S. § 12-

- 5 -

1521(1), particularly in light of the fact that Plaintiff's claims depend on the fact that no contract in fact exists between Plaintiff and Defendant.

In its Reply, Plaintiff argues that it need not show that this is an action based on implied contract, because Plaintiff clearly meets the statutory requirements of A.R.S. § 12-1521(3) based on the fact that this is an action for damages against a defendant not residing in this state. (Reply at 3; Pl.'s Supp. Br. at 2–3.) Plaintiff is correct; it is undisputed that this is an action for damages against Defendant, which does not reside in Arizona, meeting the requirements of A.R.S. § 12-1521(3). Although A.R.S. § 12-1522 requires that the affidavit supporting an application for a writ of attachment include a showing of statutory grounds for issuance, and the Sixkiller Affidavit only attempts to show that this is an action based on contract for payment of money not fully secured by real or personal property under A.R.S. § 12-1521(1) (Sixkiller Aff. ¶ 2), the Court finds that the allegations in the Complaint—which Plaintiff verified—are sufficient to demonstrate that the requirements of A.R.S. § 12-1521(3) are met and to provide notice thereof to Defendant. As a result, Plaintiff has shown that this case is one in which it may seek prejudgment attachment of Defendant's property under A.R.S. § 12-1521.[1]

### B.    Statutory Grounds for Issuance of Writ of Garnishment

With regard to its application for a writ of garnishment, Plaintiff submitted a statement meeting the requirements of A.R.S. § 12-1572. (Applic. at 6–9.) Defendant raised three objections to the application, but none prevail in this context. First, Defendant argues that Plaintiff may not seek a prejudgment garnishment on tort claims, which are by their nature unliquidated as to liability and amount (Opp'n at 12–13), but neither of the two claims upon which Plaintiff seeks prejudgment garnishment—Unjust Enrichment and Money Had and Received—are tort claims under Arizona law; they are equitable restitution claims. *E.g.*, *Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019). Second, Defendant contends Plaintiff's statement regarding Defendant's property the garnishees control is insufficient due to a lack of specificity (Opp'n at 13), but

---

[1] The Court need not examine Plaintiff's alternative argument that this is a case in which the Court can issue a writ of attachment for a debt not yet due under A.R.S. § 12-1523.

by its plain language, A.R.S. § 12-1572 does not require specificity beyond that which Plaintiff provided. And third, Defendant argues Plaintiff may not seek to serve a writ of garnishment outside of Arizona (Opp'n at 13–14), but Plaintiff permissibly seeks to serve writs on Arizona branches of interstate banks. Plaintiff's statement supporting its application for a writ of garnishment thus meets the requirements of A.R.S. § 12-1572.

### C.    Probable Validity of Plaintiff's Claims

On Defendant's request, the Court held a hearing under A.R.S. § 12-2410 to consider the probable validity of Plaintiff's claims, that is, whether Plaintiff has shown that there is a "good chance" or "substantial likelihood" that Count 1, for Unjust Enrichment, or Count 4, for Money Had and Received, have merit. (Docs. 48, 51.)

Under Arizona law, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010). To prevail on an unjust enrichment claim, a party must prove: "(1) an enrichment; (2) an impoverishment; (3) connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy at law." *Span*, 437 P.3d at 886. "Unjust enrichment is a means of restitution, which is a flexible, equitable remedy that looks to the ties of natural justice and equity to make compensation for the benefits received." *Id.* (quotations and citation omitted). Recovery under a theory of unjust enrichment, or *quantum meruit*, "presupposes that no enforceable written or oral contract exists." *See Levine v. Haralson, Miller, Pitt, Feldman, & McAnally*, *P.L.C.*, 418 P.3d 1007, 1010 (Ariz. Ct. App. 2018). Relatedly, in Arizona, a claim for money had and received is a species of unjust enrichment that contemplates a situation in which a defendant possesses money belonging to the plaintiff "which in equity and good conscience" the defendant should return to the plaintiff. *Copper Belle Mining Co. of W. Va. v. Gleeson*, 134 P. 285 (Ariz. 1913).

Plaintiff characterizes its relationship with Defendant as one in which no present contractual relationship exists, relying for that conclusion on the termination of the Teamup

Agreement by its terms when Defendant's proposed arrangement with the Arizona Cardinals organization fell through as well as the fact that Plaintiff never signed the draft of a similar agreement with Defendant in conjunction with the Phoenix Suns organization. (*E.g.*, Pl.'s Supp. Br. at 4–5.) Among other things, Plaintiff contends it "has received no value from any purported relationship with the Suns" and that the $113k worth of products and services it received from Defendant over the relevant period—a little more than ten percent of the amount it paid to Defendant—is "de minimis." (Pl.'s Supp. Br. at 5–6.)

For its part, Defendant characterizes the relationship as "a partnership to help Clutch grow its Acronis-related business, pursuant to which Clutch agreed to minimum technology consumption targets and Acronis invested in marketing assets to help Clutch grow its business to achieve those targets." (Def,'s Supp. Br. at 5.) Defendant argues that "Clutch now attempts to recast this relationship as an unauthorized charge for marketing services in order to avoid the terms it agreed to and operated under," and in doing so, "Clutch ignores the structure and purpose of the Teamup Agreement and the benefits Clutch has requested received and accepted—as well as the fact that Clutch continues to use and re-sell Acronis's technology pursuant to the Teamup Agreement to this day." (Def.'s Supp. Br. at 5.)

It is clear from the record that Plaintiff indeed continues to receive more than "de minimis" products and services from Defendant, which goes directly to Plaintiff's ability to prove that there is an absence of justification for the alleged enrichment and impoverishment in its claim for Unjust Enrichment. Aside from the $113k in products and services Plaintiff received, the evidence shows Plaintiff received substantial marketing and other benefits, including advertisements of its logo on video clips from Phoenix Suns games, a co-hosting arrangement with Defendant at the Waste Management Open golf tournament valued at $30k or more, and attendance at Arizona Cardinals and Phoenix Suns games. (*E.g.*, Def.'s Supp. Br. at 4.)

Couched in contractual terms, it remains unclear at this stage whether the agreement between Plaintiff and Defendant is one the Court should infer in law, as Plaintiff proposes

to receive the equitable restitution it seeks, or one that is implied in fact based on the parties' agreements to date as well as their conduct. *See Barmat v. John and Jane Doe Partners A-D*, 747 P.2d 1218, 1220–21 (Ariz. 1987); *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986) (stating an implied in fact contract "is proved by circumstantial evidence," and "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment"). Plaintiff argues that, in this instance, any agreement could not be implied in fact because the statute of frauds prohibits an unwritten agreement that will not be performed within one year. (Pl.'s Supp. Br. at 8.) Defendant counters that the doctrine of partial performance, which the facts indicate occurred here, removes an agreement from the statute of frauds where acts "cannot be explained in the absence of the contract" and are "unequivocally referable" to the alleged contract. (Def.'s Supp. Br. at 5 (citing *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 668–69 (Ariz. 2008)).) While Plaintiff contends that the parties' relationship was consistent with "ongoing negotiations" instead of a contractual relationship (Pl.'s Supp. Br. at 9), that is at least a factual question that, at this point, remains unresolved.[2]

In short, upon considering the parties' arguments at the hearing as well as the evidence they presented in conjunction with their briefing, the Court is not convinced at this stage that there is a good chance or a substantial likelihood that Plaintiff's claims have merit or that Defendant's defenses do not.[3] As a result, the Court must conclude Plaintiff is not entitled to the prejudgment remedies it seeks, and the Court will also deny Plaintiff's request for pre-judgment discovery in aid of enforcement of the requested writs.

. . .

---

[2] In its Supplemental Brief, Defendant also raises the doctrine of voluntary payments under *Merrill v. Gordon*, 140 P. 496 (Ariz. 1914), and its progeny. (Def.'s Supp. Br. at 8–9.) Plaintiff has not yet had the opportunity to respond to that argument, so the Court does not rely on it to reach its decision here.

[3] Read together with the provisional remedy procedural statutes, the writ of attachment statute, A.R.S. § 12-1521, and the writ of garnishment statute, A.R.S. § 12-1572, both imply that the Court must make a probable validity determination of sum certain "damages" that Plaintiff seeks as the amount of the requested provisional remedy judgment. (*See* Reply at 3–4; Def.'s Supp. Br. at 9–10; Pl.'s Supp. Br. at 7.) Based on the evidence cited *infra* as well as the lack of certainty as to Plaintiff's claimed attorney's fees, the Court would also find that Plaintiff has failed to demonstrate sum certain damages here.

**IT IS THEREFORE ORDERED** denying Plaintiff's Verified Application for Pre-Judgment Provisional Remedies (After Notice) and Motion for Pre-Judgment Discovery in Aid of Enforcement (Doc. 1-1 at 91–135).

Dated this 12th day of May, 2026.

_____
Honorable John J. Tuchi
United States District Judge

- 10 -